Emilio Pantojas GARCIA,
Plaintiff–Appellee,

v.

UNIVERSITY AT ALBANY, STATE UNIVERSITY OF NEW YORK; H. Patrick Swygert, as President of the State University of New York at Albany; Gloria Desole, as Senior Advisor to the President for Affirmative Action and Employment Planning; Sanford H. Levine, State University of New York General Counsel; Steven Beditz, as Director of the Office of Human Resource Management at the State University of New York at Albany; Colbert Nepaulsingh, as former Director of Undergraduate Studies, Department of Latin American Caribbean Studies, Sunya; Edna Acosta Belen, as Director of the Center for Latino and Latin American and Caribbean Studies, Sunya; Carlos Santiago, as former Chair of Latin American and Caribbean Studies, Sunya; Judith Gillespie, as former Dean of the College of Arts and Sciences, Sunya; Jeanne E. Gullahorn, as Vice–President for Research and Dean of Graduate Studies, Sunya; Joseph Burke, as former Interim Chancellor of the State University of New York; State University of New York, Defendants–Appellants.

Docket No. 02–7368.

United States Court of Appeals, Second Circuit.

Submitted: Jan. 28, 2003.

Decided: Feb. 10, 2003.

W. Farley Jones, E. Stewart Jones PLLC, Troy, New York, for Plaintiff–Appellee.

Sachin S. Pandya, Assistant Solicitor General, for Eliot Spitzer, Attorney General of the State of New York, (Michael S. Belohlavek, Deputy Solicitor General, of counsel) New York, New York, for Defendants–Appellants.

Before: OAKES, CALABRESI, and SACK, Circuit Judges.

CALABRESI, Circuit Judge.

This appeal, from a judgment of the federal district court for the Northern District of New York (McAvoy, *J.*), arises from the handling by employees of the State University of New York at Albany ("SUNYA") of an alleged incident of sexual harassment. Plaintiff–Appellee Emilio Pantojas Garcia charged that the defendants breached a duty of care owed him when they failed to follow University rules in the course of their attempt to discipline Garcia for this incident, causing him to sustain emotional injuries. Garcia's claim was tried before a jury, which found for Garcia and awarded him $25,000 in damages.

After the verdict, the defendants renewed the motion they had made at the close of evidence for judgment as a matter of law under Federal Rule of Civil Procedure 50 and also moved for a new trial under Rule 59. The district court denied both motions.

On appeal, the defendants make four arguments. First, the failure to follow university procedures does not provide the basis for a tort cause of action under New York law, which governs this diversity suit. Second, the trial court erred when it gave instructions to the jury implying that liability could be based on a finding that the defendants negligently investigated the sexual harassment complaint, because negligent investigation is not a tort in New York. Third, no rational jury could have found that the defendants violated any of the university's procedures. Finally, the evidence is insufficient to prove that Garcia suffered a compensable injury proximately caused by the defendants' conduct.

Because we agree with the defendants that there is no evidence that any of the defendants violated University rules in the course of pursuing disciplinary action against Garcia, we do not reach the other questions of state law in this case.

SUNYA has in place a set of "Grievance Procedures for Review of Allegations of Illegal Discrimination" ("Grievance Procedures"), which, by its own terms, "may be used by any University student or employee" who believes that he or she has been a victim of discrimination to bring that claim to the attention of the university and seek redress. While providing students and employees a mechanism through which grievances against SUNYA employees can be asserted, the Grievance Procedures also place limits on the timing and scope of such grievances and thus provide protections for those so accused. For example, students must file a grievance within 45 days of the alleged discriminatory act or within 45 days of receiving a final grade in a course taught by the accused.

The Grievance Procedures specify that, after a finding of illegal discrimination has been made, the SUNYA President will "discuss appropriate redress with the grievant," but the procedures do not detail how, when, or by whom discipline may be imposed. Rather, discipline of SUNYA employees is governed by Article 19 of the collective bargaining agreement between the State of New York and United University Professions, Garcia's labor union. Article 19 specifies, *inter alia*, that discipline may be imposed only for just cause, that notice of proposed discipline must be adequately served on employees, that proposals for discipline for acts other than those that would constitute crimes have to be brought within one year, and that employees have the right to grieve and arbitrate proposals for discipline.

Importantly, an aggrieved student or employee has the option to use or not use the Grievance Procedures. At each stage

set out by those procedures, further proceedings occur only "[i]f the grievant chooses to proceed." No such limitation appears in Article 19.

In the instant case, allegations of sexual harassment by Garcia came to the attention of the defendants not through a grievance or complaint filed pursuant to the Grievance Procedures, but through rumor. Defendants, thinking the rumored incident to be serious, sought and obtained the statement of the alleged victim, Kimberly Miner. Miner did not, however, ask that SUNYA take any action against Garcia, nor did she submit her statement until long after the 45-day time limit on student grievances had expired. Additionally, there was no evidence that the statement she did submit was contained on the "appropriate forms" referred to in the Grievance Procedures. The evidence at trial was unambiguous that Miner did not "choose[ ] to use [the] Grievance Procedure[s]," as those procedures required.

Instead, the defendants used Miner's statement and other discussions they held with Miner as evidence on which they based their decision to fire Garcia. The defendants also asked Miner to cooperate in arbitration proceedings pursuant to Article 19. When, ultimately, Miner, the only witness to the incident, decided not to appear at the proceedings, Garcia's termination was rescinded, and the charges against him were dropped with prejudice.

Garcia has pointed to no SUNYA rule that provides that the Grievance Procedures state the exclusive procedures under which SUNYA can make a finding that one of its employees engaged in what those procedures term "illegal discrimination." To the contrary, the Grievance Procedures themselves state that they are "in no way intended to supplant or duplicate any already existing grievance procedure, including any informal resolution process pres-

ently in practice." It would be surprising indeed if SUNYA had chosen to place in aggrieved students and employees the sole power to establish the basis for discipline of one of SUNYA's employees in cases of sexual harassment or other forms of illegal discrimination. Such a rule would mean that SUNYA would be barred from disciplining a professor whose discriminatory conduct was established by overwhelming evidence if the injured student or employee did not bring a grievance or failed to complain within the 45 days prescribed by the Grievance Procedures.

Since there was no evidence at trial that any provision of Article 19 was violated by the defendants and since there was no evidence that any SUNYA rule required resort to the Grievance Procedures in this case, Garcia has failed to demonstrate that the defendants violated a SUNYA rule resulting in Garcia's alleged injuries. Therefore, even if the defendants were under a duty to follow SUNYA's rules, an issue on which we express no opinion, Garcia presented no evidence that the defendants breached that duty.

Because "there is ... a complete absence of evidence supporting the verdict," *Myers v. County of Orange*, 157 F.3d 66, 73 (2d Cir.1998) (quotation marks omitted), judgment as a matter of law in favor of the defendants should have been granted.

We have considered all of the appellee's arguments and find them meritless. We therefore REVERSE the judgment of the district court and instruct that court to enter judgment in favor of the appellants.